IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

ALLEN ZOLDI, *et al.*, *Individually and On Behalf of All Others Similarly Situated,*

Plaintiffs,

v.

SHUCK IT, LLC, *et al.*,

Defendants.

2:26-CV-056-Z-BR

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Motion for Collective-Action Certification and Court Authorized Notice ("Motion"), filed on June 8, 2026. ECF No. 23. Plaintiffs seek to bring their claims in this case as a collective action under the Fair Labor Standards Act ("FLSA"), and request that the Court authorize notice to prospective collective members. 29 U.S.C. § 216(b). Defendant responded on June 29, 2026. ECF No. 26. Plaintiffs' replied on July 2, 2026. ECF No. 28. Plaintiffs' Motion (ECF No. 23) is **GRANTED in part and DENIED in part**.

**BACKGROUND**

The Drunken Oyster is a full-service restaurant in Amarillo, Texas, owned and operated by Shuck It, LLC. ECF No. 26 at 6. The restaurant was founded by Chef Rory Schepisi and was designed to provide a New Orleans French Quarter-inspired dining experience featuring Cajun-inspired cuisine, fresh seafood, oysters, steaks, and more. *Id.* The restaurant employs a variety of personnel in different front-of-house and back-of-house positions, including servers, bartenders, server assistants, kitchen staff, and managers. *Id.*

Forking Good Hospitality, Inc. ("FGH") serves as a parent hospitality company through which administrative policies and procedures were developed for use by Schepisi's restaurants. *Id.* FGH has never owned or operated a restaurant, has never received or

transferred restaurant revenue, and has no independent financial operations. *Id.* Rather, The Drunken Oyster operates through its own separate legal entity, Shuck It, LLC. *Id.*

Defendants employed Plaintiff Allen Zoldi as a server and Plaintiff Veronica Borrego as a bartender and server. ECF No. 1 at 3. According to Plaintiffs' Complaint, Defendants pay Plaintiffs and other employees less than the federal minimum wage "in an attempt to take advantage of the tip credit." *Id.* If lawfully administered, the tip credit allows an employer to include in its calculation of wages a portion of the amount of money employees receive in tips. *Id.*

Defendants allegedly required Plaintiffs and other employees to contribute a portion of their total gross sales during each shift to a tip pool controlled by Shuck It, LLC. *Id.* According to Plaintiffs' Complaint, approximately 21% of employees' tips are deducted for contribution to the tip pool. ECF No. 1 at 3. Shuck It, LLC maintained a written policy that employees are required to sign that provides "I will pay a 2% breakage fee out of my tips to cover my part of the loss." *Id.* This deduction is taken from every check. *Id.* Of the remaining 19% deducted, Plaintiffs believe some of the money is shared with hosts, servers' assistants, and bartenders. *Id.*

Shuck It, LLC allegedly reduced employees' tips for so-called "walked checks" when customers of the restaurant leave without paying the bill. *Id.* They also allegedly failed to inform its tipped employees of the provisions of the tip credit plan. *Id.* Plaintiffs argue Defendants' policy and practice of requiring its tipped employees to pay a percentage of their tips to non-tipped employees violates the FLSA. *Id.* at 5.

Plaintiffs bring this case as an "opt-in" collective action on all current and former employees who worked at least one shift as a server or bartender for Defendants and were paid a direct cash wage of less than minimum wage during the three-year period prior to the

commencement of this action through the date this case is certified as a collective action. *Id.* The proposed collectives of similarly situated employees ("Collective Members") sought to be certified under 29 U.S.C. Section 216(b) are defined as:

> Server Collective Members: All current and former employees who worked at least one shift as a server for Defendant at any time within the three (3) year period since this Complaint was filed and were paid a direct cash wage of less than minimum wage.
>
> Bartender Collective: All current and former employees who worked at least one shift as a bartender for Defendant at any time within the three (3) year period since this Complaint was filed and were paid a direct cash wage of less than minimum wage.

ECF No. 24 at 5. Plaintiffs state all servers and bartenders were "subject to the same job requirements, job duties, and paid in the same manner (pursuant to the tip credit) and therefore are all similarly situated. *Id.* Plaintiffs seek relief on a collective basis challenging Defendants' allegedly "illegal tip pooling policy and practice." ECF No. 1 at 4.

Defendants argue they utilize a tip-pooling system administered through Toast, a cloud-based restaurant management platform specifically designed for the hospitality industry that integrates customer orders, payment processing, employee timekeeping, payroll, reporting, and tip management into a single system. ECF No. 26 at 8. After each shift, Toast automatically calculates each server's required tip-pool contribution based on the restaurant's established tip-pooling configuration. *Id.* Under the configuration, servers contribute 14% of their tips to bartenders and 6% of their tips to server assistants, but only if employees serving in those respective positions worked during that shift. *Id.* If no bartender or server assistant worked the shift, no contribution is made. *Id.*

## LEGAL STANDARD

An employee is permitted to bring an action for a violation of FLSA either individually or as a collective action on behalf of herself "and other employees similarly situated." 29

U.S.C. § 216(b). Previously, courts handling collective-action certifications followed a two-step approach: a court could conditionally certify a collective at the outset of the case, and later make a final and "actual" certification at the end of discovery. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). The Fifth Circuit recently rejected this approach, offering a new framework for assessing whether collective action certification is appropriate. *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021) ("Lusardi has no anchor in the FLSA's text or in Supreme Court precedent interpreting it . . . We therefore reject Lusardi's two-step certification rubric."). Now, only two considerations guide a district court faced with certifying a collective action: (1) FLSA's limiting language, declaring that only "similarly situated" employees may proceed as a collective; and (2) "the Supreme Court's admonition that while a district court may 'facilitat[e] notice to potential plaintiffs' for case-management purposes, it cannot signal approval of the merits or otherwise stir up litigation." *Id.*

Despite such considerations, the text of FLSA does not provide a proper bedrock for certification analysis. FLSA lacks any definition of "similarly situated" and does not even mention the term "certification." *Id.* at 435–36. This requires district courts to "rigorously scrutinize the realm of 'similarly situated' workers" from the outset of the case. *Id.* Still, the plaintiff bears the burden of showing that potential collective-action members are similarly situated, using more than mere "conclusory statements" and affidavits that are not "substantial and detailed." *Trottier v. FieldCore Servs. Sols., LLC*, No. 2:20-CV-186, 2022 WL 658765, at *2 (N.D. Tex. Mar. 4, 2022); *Lopez-Gonzales v. Ramos*, No. 2:20-CV-061, 2021 WL 3192171, at *5 (N.D. Tex. July 28, 2021). "The presence of a common policy, plan, or practice affecting all putative class members" can be helpful in assessing whether putative collective-action members are similarly situated. *Trottier*, 2022 WL 658765, at *3. But, if named

plaintiffs and prospective opt-ins are too diverse to be deemed "similarly situated"—or if plaintiffs have failed to satisfy their burden of establishing similarity—certification may fail. *Swales*, 985 F.3d at 443. The bottom line is this: a district court, in the context of FLSA certification, possesses "broad, litigation-management discretion." *Id.*

Only after the district court determines that certification of a collective is appropriate can opt-in notices be issued. *Id.* A similarly situated employee inclined to join the suit should receive "accurate and timely notice" to reap the benefits of a FLSA collective action. *Id.* at 435; *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 173 (1989).[1] However, employees do not have an inherent right to receive notice; rather, district courts have discretion regarding the decision to send notice following certification. *Swales*, 985 F.3d at 435–36. A court's oversight regarding a collective action and the corresponding notice process must be agnostic and scrupulously respect judicial neutrality. *Id.* at 436. To be sure, "district courts must take care to avoid even the appearance of judicial endorsement of the merits of the action. No judicial thumbs (or anvils) on the scale." *Id.*

## ANALYSIS

### I. Plaintiffs have established sufficient similarity between the Plaintiffs and the Collective Members.

Plaintiffs are sufficiently similar to the Collective Members. Courts have held that the "similarly situated" requirement for Collective Members under the FLSA "need not mean 'identical.'" 7B WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1807 (3d ed. 2026). "To determine whether notice should be provided, district courts must decide whether 'merits questions can be answered collectively.'" *Sanchez v. 600 North Akard LLC*, No. 3:23-CV-540,

[1] *Hoffmann-La Roche* is a case involving the Age Discrimination in Employment Act, containing a provision identical to Section 216(b) of FLSA. Courts consistently apply *Hoffmann-La Roche* in the context of FLSA cases. *See generally Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021); *In re JP Morgan & Chase*, 916 F.3d 494 (5th Cir. 2019).

2023 WL 9472842, at *5 (N.D. Tex. Dec. 26, 2023) (citing *Swales*, 985 F.3d at 442). The Fifth Circuit has held this showing "requires plaintiffs to show a demonstrated similarity between the purported collective, such as a factual nexus that binds the claims together so that hearing all claims in one proceeding is fair to all parties and not beset with individual inquiries." *Klick v. Cenikor Foundation*, 94 F.4th 362, 372 (5th Cir. 2024). For example, where plaintiffs have the same job description and allegations revolve around the same aspect of that job, a district court "will not likely need mountains of discovery to decide whether notice is appropriate." *Swales*, 985 F.3d at 441–42.

Here, Defendants' alleged policy of paying less than minimum wage and denying tipped employees a substantial part of their tips creates a sufficient nexus. Plaintiffs and the Collective Members were all either servers or bartenders performing substantially similar work under the same terms, pay provisions, and policies or practices. Plaintiffs and Collective Members were all paid in the same manner—via a subminimum wage with a mandatory tip pool that Plaintiffs allege violated the FLSA. ECF No. 24 at 12. When plaintiffs and Collective Members "are all subject to the same unlawful pay policy" such as "an invalid tip pooling arrangement," courts are likely to rule in favor of such claims being resolved collectively. *Garcia-Alvarez v. Fogo De Chao Churrascaria (Pittsburgh) LLC*, No. 4:21-CV-124, 2022 WL 2119542, at *11 (E.D. Tex. June 13, 2022). Because the allegations underlying this case revolve around this compensation structure, the Court finds the sufficient similarity link has been satisfied.

Defendants argue that "Plaintiffs' own declarations reveal material differences regarding the alleged compensation practices, the amounts deducted, the recipients of tip-pooling contributions, the positions worked, and the circumstances of each employee's employment." ECF No. 26 at 14. However, for this argument to work, Defendants demonstrated differences must be "material to the claim at issue." *Trottier v. FieldCore*

*Services Solutions, LLC*, No. 2:20-CV-186, 2022 WL 658765, at *5 (N.D. Tex. Mar. 4, 2022); *see also Greinstein v. Granite Servs. Int'l, Inc.*, No. 2:18-CV-20, 200 WL 6821005, at *8 (N.D. Tex. Nov. 20, 2020) ("[T]he differences between class members' particular responsibilities and duties are not material to the allegations in this case."). Here, as in *Greinstein*, the only material matter with respect to the claims and defenses asserted is the uniform pay scheme, which Plaintiffs contend violates the FLSA. *See Greinstein*, 2020 WL 6821005, at *8 (N.D. Tex. Nov. 20, 2020). The differences Defendants cite do not change the common compensation policy that underly Plaintiffs' claims and are thus immaterial.

Defendants also assert that Plaintiffs rely on insufficient evidence to prove that collective members are similarly situated. They claim the declarations Plaintiffs cite in their appendix "consist largely of boilerplate assertions, hearsay statements, and conclusory allegations repeated nearly verbatim across multiple declarants." ECF No. 26 at 18. According to Defendants, this evidence "does not satisfy Plaintiffs' burden under *Swales* to demonstrate through sufficient proof that the Collective Members are similarly situated and that the relevant merits questions can be answered collectively." *Id.* (citing *Swales*, 985 F.3d at 442).

Defendants' arguments are unavailing. The Court first notes at the outset while *Swales* requires courts to examine "merits questions" at the notice stage to determine whether questions can be answered collectively, it is unclear whether evidence must be scrutinized under the Federal Rules of Evidence. Regardless of this uncertainty, Defendants argue Plaintiffs improperly rely on inadmissible hearsay in their declarations to the extent they seek to establish what other employees experienced, what deductions were taken from other employees, how tips were distributed to other employees, or whether other employees

want to join this lawsuit. ECF No. 26 at 19.[2] However, all the alleged inadmissible statements in Plaintiffs' appendix are supported not merely from what other employees experienced but also from "personal knowledge obtained through personal observations." ECF No. 25 at 4, 6, 8, 10, 12, 14, 16. Accordingly, the statements are not solely based on what other employees experienced or said, and the statements are not inadmissible hearsay.

Even if the statements were inadmissible hearsay that the Court was not able to review, such statements would comprise only a portion of the evidence. Defendants incorrectly state that party admissions cited in Plaintiffs' Appendix constitute hearsay. But under the Federal Rules of Evidence, party admissions are defined as not hearsay.[3] FED. R. EVID. 801(d)(2)(A); *see also* 6 HANDBOOK OF FED. EVID. § 801:16 (10th ed. 2025) ("A party's own statement made in his individual capacity when offered by an opposing party is defined as not hearsay[.]"). "The statement need not relate to a matter as to which the party had personal knowledge[.]" 6 HANDBOOK OF FED. EVID. § 801:16 (10th ed. 2025). Accordingly, even under the Federal Rules of Evidence, the Court can still review these statements when making its determination on whether to grant the Motion.

Provisions in the Employee Handbook and Breakage Fee Agreement also support Plaintiffs' argument that employees are similarly situated. The Employee Handbook states Defendant "reserve[s] the right to deduct up to 3% for mis-handling and or breakage of restaurant property." ECF No. 25 at 32. The Breakage Fee Agreement requires 2% of the pooled tips to be taken as a "breakage fee." ECF No. 25 at 43. This fee is memorialized in a written policy, which employees are required to sign. The form states "[d]ue to the constant

---

[2] Such statements include: Zoldi Decl., App'x ¶¶ 5, 10; Borrego Decl., App'x ¶¶ 6, 9; Granger Decl., App'x ¶ 8; Sheive Decl., App'x ¶ 8; Harvey Decl., App'x ¶ 8.

[3] Party admissions include: Zoldi Decl., App'x ¶ 4, 6, 9; Schiller Decl., App'x ¶ 4; Adams Decl., App'x ¶ 6.

loss of Forking Good Hospitality Company Property, Glass, & Silver incurred from improper handling or care, I understand that I will pay a 2% breakage fee out of my tips to cover my part of the loss." *Id.* Both the provision in the Employee Handbook and Breakage Fee Agreement supports the conclusion that all employees working under Defendants were subject to the same tipping policy.

The Court finds the various declarations along with the Employee Handbook and Breakage Fee Agreement as sufficient evidence under the *Swales* framework to find Collective Members similarly situated. Moreover, despite Defendants arguments to the contrary, Plaintiffs need not produce demonstrating a violation of the FLSA on the merits. *Swales* made clear when conducting an analysis on whether to authorize notice to prospective collective members, a district court "cannot signal approval of the merits." 985 F.3d at 434. Determining whether a nonmovant has failed to present sufficient evidence on the merits of the claims for litigation to continue is limited to a motion for summary judgment under the Federal Rule of Civil Procedure 56.

Accordingly, the Court finds that Plaintiffs and Collective Members are similarly situated. Certification of a collective on this matter is appropriate.

**II. Notice to the Collective Members reasonably apprises them of their opportunity to reap the action's benefits.**

"[F]ederal judges have the power to authorize the sending of notice to potential FLSA class members to inform them of the action and give them opportunity to participate by opting in." *Lopez-Gonzales*, 2021 WL 3192171, at *8 (citing *Tillis. Glob. Fixture Servs.*, 2020 WL 1443490, at *6 (S.D. Tex. Mar. 23, 2020). Providing notice is "particularly important for FLSA collective actions as potential plaintiffs' statute of limitations continue to run unless and until a plaintiff gives his consent in writing to become a party and such consent is filed in the court in which such action is brought." *Id* (internal marks omitted).

The Court finds that notice should be provided to the Collective Members in this case so they can make an informed decision about joining the action and preserving their claims for unpaid wages by tolling the statute of limitations.

*A. Form of Notice*

With respect to the form of the notice, "it is well settled that courts have wide discretion in deciding the content of the notice and how notice is distributed." *Lopez-Gonzales*, 2021 WL 3192171, at *8. Plaintiffs argue that Defendants should be ordered to produce, within fourteen days of granting this Motion, a list in a useable (.xls) format of names, last known addresses, telephone numbers, e-mail addresses, and dates of employment for all members of the collective. ECF No. 24 at 16. Plaintiffs further request the following: (1) the opt-in notices cover a three-year period beginning on the date the Complaint was filed; (2) a court-authorized reminder notice be distributed thirty days after the initial notice; and (3) opt-in plaintiffs can execute consent forms electronically. Defendants claim that this form of notice is overly expansive in both scope and method of distribution. ECF No. 26 at 24. The Court addresses the different aspects of notice below.

**1. Methods of distribution**

Plaintiffs propose sending notice using mail, email, and text message. ECF No. 24 at 17. Since "courts have wide discretion in deciding . . . how notice is distributed," this Court concludes that issuance of Plaintiffs' proposed notices via mail, email, and text message is appropriate. *Lopez-Gonzales*, 2021 WL 3192171, at *8; *see also Cervantez v. TDT Consulting, LLC*, No. 3:18-CV-2547, 2019 WL 3948355, at *10 (N.D. Tex. July 22, 2019) (finding notice distribution through mail, email, and text message to be permissible); *Sanchez v. 600 N. Akard LLC*, No. 3:23-CV-540, 2023 WL 9472842, at *7 (N.D. Tex. Dec. 26, 2023) (same); *Stringer v. Big Texan Steak Ranch, Inc.*, No. 2:23-CV-181, 2025 WL 642050, at *5 (N.D. Tex. Feb. 27, 2025) (same).

### 2. Opt-in period and reminder notices

Plaintiffs request a 60-day opt-in period running from the initial date of transmitting the proposed notice and consent forms. ECF No. 24 at 18. After the passage of 30 days, Plaintiffs request permission to send a reminder notice to putative collective members who have not yet responded to the initial notice and consent form. First, a notice of period of 60 days is viewed as the default, and the Court sees no compelling justification for limiting that period. *McCloud v. McClinton Energy Grp., L.L.C.*, No. 7:14-CV-120, 2015 WL 737024, at *10 ("Although opt-in periods commonly range from as little as 30 to as many as 120 days, most courts appear to default to a notice period of 60 days[.]").

Second, the Court finds it reasonable to provide permission to Plaintiff to send a reminder notice after 30 days to prospective collective members who have not yet responded to the initial notice. Defendants object, explaining that Plaintiffs "offer no meaningful explanation for why a second notice is necessary." ECF No. 26 at 26. But this Court does not find that a 30-day reminder would be overly burdensome or communicate an appearance of judicial impropriety, as courts have often approved follow-up communications. *See, e.g.*, *Cervantez*, 2019 WL 3948355, at *12 (a "follow-up communication after 30 days" is permissible); *Sanchez*, 2023 WL 9472842, at *7 (same); *Stringer*, 2025 WL 642050, at *11 (same); *Meadows v. Latshaw Drilling Co., LLC*, No. 3:15-CV-1173, 2016 WL 11664389, at *5 (N.D. Tex. Feb. 24, 2016) (permitting a reminder after 60 days). Accordingly, the Court determines that a 60-day opt-in period with a reminder after 30 days is reasonable.

### 3. Notice coverage

Plaintiffs request the opt-in notices cover a three-year period beginning on the date the Complaint was filed. ECF No. 24 at 16. Defendant contends that "any notice period should be measured from the date that notice issues, not the date Plaintiff's Complaint was filed." ECF No. 26 at 24. In their Reply, Plaintiffs shift their position and state they are "willing to

to measure the notice period of three years from the date that notice issues and not the date the Complaint was filed." ECF No. 28 at 10.

29 U.S.C. Section 255 provides the relevant statute of limitations period under FLSA, requiring an action to commence within two years after the cause of action accrued if the violation was "unwillful" and within three years if the violation was "willful." 29 U.S.C. § 255. Unlike the limitation period in class actions—which is automatically tolled for potential class members upon filing—the limitations period in the collective-action context continues to run until an opt-in plaintiff files written consent to join. *Kalenga v. Irving Holdings, Inc.*, No. 3:19-CV-1969, 2020 WL 2841396, at *6 (N.D. Tex. June 1, 2020); 29 U.S.C. § 256. However, it is within a court's discretion to toll the limitations period on equitable grounds in rare and exceptional cases. *Blundell v. Home Quality Care Home Health Care, Inc.*, No. 3:17-CV-1990, 2018 WL 276154, at *5 (N.D. Tex. Jan. 3, 2018). But Congress has not provided for tolling while a court considers collective-action certification, instead "express[ing] concern that an opt-in plaintiff should not be able to escape the statute of limitations bearing on his cause of action by claiming that the limitations period was tolled by the filing of the original complaint." *Cervantez*, 2019 WL 3948355, at *12 (quoting *McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 808 (S.D. Tex. 2010)).

Here, Plaintiffs have failed to identify any rare or exceptional circumstances justifying equitable tolling. For this reason, and in adherence to the strict construction of FLSA's limitation provision, this Court determines that equitable tolling is not warranted. Accordingly, notice should cover a three-year period beginning on the date of this Court's Order. *See, e.g.*, *Floyd v. Stryker Corp.*, No. 3:22-CV-1131, 2024 WL 24341, at *7 (N.D. Tex. Jan. 2, 2024) (basing notice on the date of the court's order); *Snively v. Peak Pressure Control, LLC*, 174 F. Supp. 3d 953, 963 (W.D. Tex. 2016) (declining to measure the limitations period from the date plaintiff's complaint was filed).

**4. Production of information for distribution**

Plaintiffs request that Defendant produce a list of "names, last known addresses, telephone numbers, e-mail addresses, and dates of employment for all members of the collective" in a usable electronic format. ECF No. 24 at 16. Defendant does not appear to object to this request. Courts commonly order employers to produce such information for the purpose of facilitating collective-action notice. *See, e.g.*, *Cervantez*, 2019 WL 3948355, at *11; *Sanchez*, 2023 WL 9472842, at *7; *Kalenga*, 2020 WL 2841396, at *6 (N.D. Tex. June 1, 2020). Hence, the Court orders Defendant to produce a list of names, addresses, telephone numbers, electronic mail addresses, and dates of employment of all prospective opt-in plaintiffs **within 14 days of the date of this Order**.

**5. Electronic signatures**

Plaintiffs request "that potential opt-in plaintiffs be afforded the opportunity to electronically sign their consent forms." ECF No. 24 at 18. Defendants object explaining "[t]he problem is that Plaintiffs have not described the proposed process with sufficient detail for the Court to evaluate its reliability." ECF No. 26 at 27. They argue that Plaintiffs "do not explain what platform will be used, how identity will be verified, how consent records will be maintained, or what procedures will exist to resolve disputes concerning authenticity or timing." *Id.* Defendants believe these details are significant "because the FLSA limitations period will continue to run until a valid consent form is filed." *Id.* Defendants assert that without the proper safeguards, "disputes may later arise concerning whether a particular individual actually completed a consent form, when such a form was executed, or whether that form accurately reflects the individual's intent to join this litigation." *Id.*

The Court rejects Defendants argument and permits opt-in plaintiffs to electronically sign their consent forms. 15 U.S.C. Section 7001(a)(1) states that "a signature, contract, or other record relating to [any transaction in or affecting interstate or foreign commerce] may

not be denied legal effect, validity, or enforceability solely because it is in electronic form[.]" Case law also supports using electronic signatures. *See Jones v. JGC Dallas LLC*, No. 3:11-CV-2743, 2012 WL 6928101, at *5 (N.D. Tex. Nov. 29, 2012) ("Class members should be provided the option of executing their consent forms online via an electronic signature service."); *see also Torres v. Chambers Protective Services, Inc.*, No. 5:20-CV-212, 2021 WL 3419705, at *12 ("[C]ourts that have allowed electronic notice also allowed putative collective-action members to execute their opt-in forms through an electronic-signature service."). Plaintiffs also note they plan to use Docusign's eSignature Solution, the standard platform in the legal industry, compliant with terms of the Uniform Electronic Transactions Act and the Electronic Signatures in Global and National Commerce Act. Moreover, Defendants' concerns regarding electronic signatures are speculative. All disputes involving the authenticity or timing of signatures can be dealt with as they arise. Thus, the Court finds that the use of electronic signatures on consent forms is permissible.

**6. Negotiated Notice forms**

Finally, Defendants explain they object to the wording of the Notice forms and request the Court order parties to confer and come to an agreement regarding the language in the forms. Plaintiffs say they are "willing to accept Defendants' redlined copy of the proposed Notice forms attached to their response." ECF No. 10 at 10. The Court thus **ORDERS** the parties to confer and find agreement on the language in the Notice forms in a way that is consistent with this Order.

CONCLUSION

For the above reasons, the Court **GRANTS** in part and **DENIES** in part Plaintiffs' Motion for Court-Authorized Notice. ECF No. 23. Specifically, the Court:

- **GRANTS** Plaintiffs' request to certify a collective action and issue notice covering a three year period.
- **DENIES** Plaintiffs' request to measure the limitations period from the date the Complaint was filed, instead requiring the limitations period to be measured from the date of this Order.
- **GRANTS** Plaintiffs' request to issue notice using mail, electronic mail, and text message.
- **GRANTS** Plaintiffs' request for a 60-day opt-in period and follow up communication 30 days after initial notice is issues;
- **ORDERS** Defendants to produce a list of names, last known addresses, telephone numbers, electronic mail address, and dates of employment for all potential members of the collective in a useable (.xls) format **within 14 days of this Order**;
- **ORDERS** Parties to confer and come to a resolution on the final language in the Notice forms.

**SO ORDERED.**

October 29, 2026

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE